# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                    NO. 4:13CV00498 JLH

5012 NORTH 6TH STREET,
BLYTHEVILLE, ARKANSAS, real property
and residence; 1105 GOLF LINKS,
BLYTHEVILLE, ARKANSAS, real property
and residence; 925 E. MAIN, BLYTHEVILLE,
ARKANSAS, real property and structures;
2011 NISSAN GT-R VIN #JN1AR5EF8BM240254;
and 2004 FORD F-150 VIN #1FTRW12W34KA93555                                DEFENDANTS

ROBERT D. ALLEN; and DERRICK ALLEN                                              CLAIMANTS

## OPINION AND ORDER

This is a civil forfeiture action brought by the United States under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6) against three parcels of real estate in the city of Blytheville, Arkansas, located at 5012 North 6th Street, 1105 Golf Links, and 925 East Main, and two vehicles, a 2011 Nissan GT-R and a 2004 Ford F-150.  Robert Allen has filed affidavits of claims to the 2011 Nissan GT-R and the three parcels of real property, and he has moved to dismiss the forfeiture complaint. In response, the government argues that the motion to dismiss is premature because Allen has not fully responded to its discovery requests seeking information to verify his standing to contest the forfeiture and that, in any event, the complaint is sufficient.  In the alternative, the government has requested an opportunity to amend, should the Court determine that Allen has standing and that the complaint is insufficient.  For the reasons explained below, Allen's motion to dismiss is granted.

**I.**

On August 26, 2013, the United States filed a civil forfeiture complaint against the three parcels of real property. On August 28, 2013, the United States amended the complaint to add the two vehicles. Document #3. The amended complaint contains the following allegations. Cedric Jackson and Allen are involved in the distribution of controlled substances, and Jackson launders drug proceeds through Allen and others.[1] Jackson provides drug proceeds in cash to Allen, who uses the cash to purchase vehicles and real estate, which are used by Jackson and Allen. Agents of unidentified federal and state law enforcement agencies have interviewed persons who have implicated Jackson and Allen as members of a drug-trafficking conspiracy. These persons have purchased drugs from Jackson, witnessed Jackson and Allen selling drugs, and observed cash transfers from Jackson to Allen. State officers have witnessed Jackson and Allen meeting with persons whom the officers suspect to be involved in drug activity. State officers have made controlled purchases of narcotics from persons who are suspected of being members of Jackson's drug-trafficking organization. State authorities who executed a search warrant against a residence rented by Jackson located ammunition and five cellular telephones. Officers located four unidentified vehicles at Jackson's residence, two of which were titled in Allen's name. A person or persons saw Jackson driving unidentified vehicles titled in Allen's name, and a person or persons

---

[1] Allen has not been indicted. The records in the present case do not state whether Jackson has been indicted. A person named Cedric Jermaine Jackson was indicted in this district on March 6, 2013, on a charge of felon in possession of a firearm. That Cedric Jackson pled guilty and was sentenced to three years of probation. *United States v. Cedric Jermaine Jackson*, E.D. Ark. No. 4:13CR00073. Court records indicate that the Cedric Jackson who was the defendant in that case resides in Blytheville.

told authorities that Jackson is the true owner of those vehicles.[2] From 2008 to 2012, Allen spent several hundreds of thousands of dollars more on the payments of various real estate and personal loans and deposits into savings and checking accounts than he reported as gross income. *Id.* at 2-3 ¶¶ 6-15.

Regarding the particular properties to be forfeited here, the complaint alleges, first, that Allen purchased 5012 North 6th Street in June 2012, that "[a] substantial amount of the mortgage payments have been made in the form of cash," and that "[t]his cash represents proceeds of drug trafficking." *Id.* at 3 ¶¶ 16-18.

Second, the complaint alleges that Allen purchased 1105 Golf Links in April 2009, that "[a]ll of the mortgage payments for this property were made in the form of cash," that "[t]his cash represents proceeds of drug trafficking, that "[a]lthough titled in Allen's name, Jackson has held out to various individuals that he is the owner of the residence," that it "was the location of several large cash payments from Jackson to Allen," and that "on several occasions, witnesses saw at this location large amounts of cash believed to be drug proceeds." *Id.* at 4 ¶¶ 20-24.

Third, the complaint alleges that Allen purchased 925 East Main in March 2005, that "[a] substantial amount of the payments of this property were made in the form of cash," that "this cash represents proceeds of drug trafficking," that "[t]his property was used to prepare drugs for distribution, [to] conceal at least one payment from Jackson to Allen, and [to] provide an air of legitimacy to the drug related funds Allen spent on various real and personal property." *Id.* at 4 ¶¶ 26-29.

---

[2] Other than Jackson and Allen, no one is named or otherwise identified in the amended complaint.

3

Finally, the complaint alleges that Allen received a loan for the purchase of the 2011 Nissan GT-R in August 2010, that "Allen paid off the loan in approximately one month, and the loan payments were in the form of cash and transfers from other accounts," that "[t]he account transfers and cash represent proceeds of drug trafficking and money laundering." *Id.* at 5 ¶¶ 31-33.

The complaint further alleges that each of these properties is subject to forfeiture as proceeds of drug trafficking, as items used to facilitate drug trafficking, or as property that was involved in money laundering. *Id.* at 3-5 ¶¶ 19, 25, 30, 34.

On September 27, 2013, Robert Allen filed affidavits of claims to the 2011 Nissan GT-R and the three parcels of real property. *See* Documents #4, #5, #6, and #7.[3] In each affidavit, Allen asserted ownership of the asset and identified the date on which he purchased it.

On May 13, 2014, the government served Allen's counsel with a set of 13 special interrogatories. Allen's original counsel withdrew in July 2014, and Allen obtained new counsel, who submitted responses to the interrogatories on August 15, 2014. Allen declined to answer portions of the interrogatories requesting tax information, asserting his rights under the Fifth Amendment. On September 18, 2014, the United States sent a letter to Allen, objecting that his answers to interrogatories 3, 5, 6, and 7 were deficient. The United States requested that Allen supplement his responses to those interrogatories by October 10, 2014. On October 10, 2014, Allen supplemented his responses to interrogatories 3 and 7, but objected to the United States's request that he supplement his responses to interrogatories 5 and 6, again asserting his rights under the Fifth Amendment. Allen's October 10 letter describes the responses he previously provided to the United States. It states, in pertinent part:

---

[3] Robert Allen has not filed a claim to the 2004 Ford F-150. A person named Derrick Allen has filed a claim to that vehicle. Document #8.

To support standing for the limited scope of special interrogatories, Claimant responded to Special Interrogatory Nos. 1 and 2 with the following:

a) Exhibit A, No. 1. 925 E. Main St: 1) warranty deed evidencing a legal transfer of ownership from First National Bank of Blytheville to Claimant; 2) an Entergy bill and Columbia Insurance Group Policy Declarations page evidencing Claimant's dominion and control over defendant property; and 3) Mississippi County Real Property record evidencing Claimant's ownership and a history of title transfers dating back to 1996[.]

\* \* \*

c) Exhibit A. No. 3. 1105 Golf Links: 1) warranty deed evidencing a legal transfer of ownership from Carla J. Nelson to Claimant; 2) a SourceGas Arkansas Inc, bill, an Entergy bill, and a Shelter Insurance Companies Evidence of Insurance evidencing Claimant's dominion and control over defendant property; and 3) Mississippi County real Property records evidencing Claimant's ownership and a history [of] title transfers dating back to 1979.

d) Exhibit A. No. 4. 5012 N. 6th St: 1) warranty deed evidencing a legal transfer of ownership from Matthew R. Mosley and Whitney R. Mosley to Claimant; 2) a Scrivenor's [sic] Error Affidavit correcting part of the legal description; 3) an Entergy bill evidencing utilities in Claimant's name, American Modern Select Insurance Company Dwelling Policy Declarations, a SourceGas Arkansas Inc., bill evidencing Claimant's dominion and control over defendant property; and 4) Mississippi County Real Property records evidencing Claimant's ownership and a history [of] title transfers dating back to 1992.

e) Exhibit B. 2011 Nissan GTR: 1) Shelter Insurance Companies Declarations page evidencing Claimant's dominion and control over defendant property; and 2) a Certificate of Title proving ownership under Arkansas law; and 3) a Purchase Agreement evidencing Claimant's legal purchase of Defendant Property.

Document #29-1 at 2.[4] Allen's letter then supplemented his responses by providing information about sums of money that he received between 2005 and 2013 from the sale of both real and personal property, insurance settlements, loans, and gifts from friends and family members. It stated:

---

[4] The parties have not supplied these documents to the Court. However, the United States has neither disputed that Allen supplied these documents nor challenged their authenticity.

a)   On or about August 2008, Claimant received $101,555.00 which represents proceeds from the sale of real property located at 908 Illinois St., Blytheville, Arkansas.

b)   On or about September 2009, Claimant received approximately $94,516.50 which represents proceeds from an insurance settlement.

c)   From February 16, 2009 to May 3, 2010, Claimant received $20,396.65 which represents proceeds from an insurance settlement.

d)   From 2005-2013, Claimant received loans and gifts from his father, Robert A. Allen and Denise Allen. These loans and gifts likely exceed $120,000 and include a $25,000 contribution for the down payment on the East Main Property.

e)   On or about September 2010, Claimant received a loan from his father, Robert A. Allen, in the amount of $161,522.21. The amount represents a portion of proceeds from the sale of a house owned by Robert A. Allen, Claimant's father.

f)   On or about August 2011, Claimant received approximately $29,000 from the sale of a boat.

g)   Rosemary Allen, Claimant's mother, provided periodic financial gifts to Claimant.

h)   Athena Moore and Amber Copeland contributed to mortgage payments.

*Id.* at 3.

## II.

Before addressing Allen's motion to dismiss, the Court must address the threshold issue of Allen's standing to challenge the amended complaint at this stage of the litigation.

**A.   Allen's Standing at the Pleading Stage**

In its response brief to Allen's motion to dismiss, the United States challenges Allen's standing to intervene in this action, arguing that Allen is a mere nominal owner of the assets, that Allen has failed to fully respond to the United States's special interrogatories, and that Allen has not

adequately explained whether he used legitimate funds to pay for the assets. "A forfeiture claimant must satisfy both constitutional and statutory standing requirements to file a verified claim properly." *United States v. Eleven Million Seventy-One Thousand One Hundred & Eighty-Eight Dollar & Sixty Four Cents ($11,071,188.64) in U.S. Currency*, No. 4:12-CV-1559 CEJ, 2014 WL 301014, at *1 (E.D. Mo. Jan. 28, 2014) (quoting *United States v. ADT Sec. Svcs, Inc.,* 522 F. App'x 480, 489 (11th Cir. 2013)).

> In a forfeiture case, a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy. This threshold burden is not rigorous: "To have standing, a claimant need not prove the underlying merits of the claim. The claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property." *United States v. 7725 Unity Ave. N.*, 294 F.3d 954, 957 (8th Cir. 2002) (citation omitted). We have held in numerous cases that a colorable ownership interest "may be evidenced in a number of ways including showings of actual possession, control, title and financial stake." *United States v. One 1945 Douglas C-54 (DC-4) Aircraft*, 647 F.2d 864, 866 (8th Cir. 1981); *see 7725 Unity Ave.*, 294 F.3d at 956; *1998 BMW*, 235 F.3d at 399; *United States v. One 1990 Chevrolet Corvette*, 37 F.3d 421, 422 (8th Cir. 1994).

*United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003). "To establish statutory standing under Rule G(5) of the Supplemental Rules, a 'person who asserts an interest in the defendant property' must 'state the claimant's interest in the property.'" *Eleven Million Seventy-One Thousand One Hundred & Eighty-Eight Dollar & Sixty Four Cents ($11,071,188.64) in U.S. Currency*, No. 4:12-CV-1559 CEJ, 2014 WL 301014, at *1 (E.D. Mo. Jan. 28, 2014) (quoting Fed. R. Civ. P. Supp. R. G(5)(a)(i)(B)). "At the pleading stage, a claimant satisfies this burden by alleging a sufficient interest in the seized property." *Id.* (quoting *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008)) (alteration omitted). "'Courts have held that an allegation of ownership and some evidence of ownership are together sufficient to establish

standing to contest a civil forfeiture.'" *Id.* (quoting *United States v. United States Currency, $81,000*, 189 F.3d 28, 35 (1st Cir. 1999)) (alteration omitted).

At this early stage of the litigation, Allen's affidavit of ownership in the assets, the documents showing that he has title to them, and the financial information that he has provided to the government are sufficient to establish both Article III and statutory standing to contest the civil forfeiture action.

The United States's argument that Allen has not established standing relies on 18 U.S.C. § 983(d)(6)(B)(iii), which provides in part that "a nominee who exercises no dominion or control over the property" is not an "owner." The government's argument relies also on cases such as *United States v. One 1990 Chevrolet Corvette, VIN No. 1G1YY3384L5104361, with All Appurtenances & Attachments thereon*, 37 F.3d 421 (8th Cir. 1994), which states, in pertinent part, that "bare legal title by one who does not exercise dominion and control over the property is insufficient to establish ownership. A nominal owner who lacks possession of the defendant property and did not exercise dominion and control over it does not have an interest sufficient to have standing to challenge forfeiture." *Id.* at 422 (quotations and citations omitted). But the Eighth Circuit has explained:

> As relevant here, the statute defines the term "owner" to include "a person with an ownership interest in the specific property sought to be forfeited," and to exclude "a nominee who exercises no dominion or control over the property." 18 U.S.C. § 983(d)(6). Although many cases refer to this issue as part of the "standing" inquiry, it is in fact an element of the innocent owner's claim on the merits. When claimants have Article III standing but fail to prove an ownership interest that meets these statutory criteria, the "statement that Claimants lacked 'standing' is simply another way of stating that Claimants had failed to establish on the merits a property interest entitling them to relief." *United States v. Hooper*, 229 F.3d 818, 820 n.4 (9th Cir. 2000); *see United States v. $9.041,598,68*, 163 F.3d 238, 245 (5th Cir. 1998); *United States v. 2001 Honda Accord EX*, 245 F. Supp. 2d 602, 607 n.4 (M.D. Pa. 2003).

8

*One Lincoln Navigator 1998*, 328 F.3d at 1014. The Ninth Circuit has explained more fully how the claimant's burden differs at each stage of the proceeding:

> At the motion to dismiss stage, a claimant's unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing. *United States v. 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008); *$191,910.00*, 16 F.3d at 1058. If the claimant instead asserts a possessory interest at the motion to dismiss stage, the claimant must offer some "factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property." *$515,060.42*, 152 F.3d at 498. "Mere unexplained possession will not be sufficient." *$191,910.00*, 16 F.3d at 1058 (emphasis in original). At trial, "[t]he claimant has the burden of establishing, by a preponderance of the evidence, that he has an interest in the property." *United States v. Section 18*, 976 F.2d 515, 520 (9th Cir. 1992).

*United States v. $133,420.00 in U.S. Currency*, 672 F. 3d 629, 638 (9th Cir. 2012) (emphasis omitted). At this stage of the proceeding, Allen does not have to prove on the merits that he has a property interest that entitles him to relief.

The United States's argument further relies on cases such as *United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 565 (D. Md. 2013) (stating that under "Rules G(6)(c) and G(8)(c)(ii)(A) . . . the claimant must respond to the special interrogatories, and [the] court must determine whether the claimant has standing to contest the forfeiture, before [the] court addresses any other issue that the claimant may raise."), and *United States v. Approximately $658,830.00 in U.S. Currency*, No. 2:11-CV-00967 MCE, 2011 WL 5241311, at *3 (E.D. Cal. Oct. 31, 2011) (denying the claimant's motion to dismiss as prematurely filed because the claimant had not responded to the government's special interrogatories).

Under Rule G(6)(a), "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." "The purpose of th[is] rule is to permit the

9

government . . . to gather information that bears on the claimant's standing." *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 563 (8th Cir. 2014) (quotation and citation omitted). There, $154,853.00 had been seized during a traffic stop. *Id.* at 561. After the district court struck the claimant's initial claim for failure to sufficiently state an interest in the currency under Supplemental Rule G(5), the claimant filed an amended claim seeking return of the money. The amended claim stated that the claimant had earned $4,500.00 of the seized currency through his employment and that the remaining $150,353.00 had been given to him by another, unidentified person with the claimant acting as a bailee. *Id.* at 562. The claimant objected under the Fourth and Fifth Amendments to providing any further information. The government submitted special interrogatories to the claimant under Supplemental Rule G(6) requesting information about the claimant's relation to the currency. *Id.* at 561-62. The claimant responded by claiming the Fourth and Fifth Amendment exclusionary rules as a privilege against answering each interrogatory. The district court struck the claimant's amended claim, finding that it did not comply with Supplemental Rules G(5)(a)(iii) and G(6), and the district court issued an order of forfeiture for the entire $154,853.00. *Id.* at 562. On appeal, the claimant argued, among other things, that the court abused its discretion in striking his amended claim. The Eighth Circuit affirmed the district court's ruling as to the $150,353.00 because the claimant had failed to identify the bailor, as required under Supplemental Rule G(5)(a)(iii) and 18 U.S.C. § 983(d)(6)(B)(ii). *Id.* at 563. As to the $4,500.00 the claimant contended that he earned through his employment, however, the Eighth Circuit reversed, stating:

> Such a claim appears sufficient to state a colorable "ownership interest" as required by 18 U.S.C. § 983(d)(6)(A), as [the claimant] would certainly have an ownership interest in earned income. If [the claimant] had already established standing as to the

$4,500, as the government concedes, then special interrogatories were unnecessary to determine his standing as to that currency.

*Id.* at 564.

Here, the government has not conceded that Allen has standing. As noted above, Allen has, however, provided sufficient responses to the government's special interrogatories to show that he has standing to contest the forfeiture. Although Allen asserted his Fifth Amendment rights to some of the interrogatories, he has nonetheless provided the United States with documents showing that he has title to the assets, along with pertinent financial information. Allen has established standing to contest the government's forfeiture action. *Cf. Torres v. $36,256.80 in U.S. Currency*, 25 F.3d 1154, 1158 (2nd Cir. 1994) ("[A]llegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture.").

**B.      Allen's Motion to Dismiss**

"A claimant who establishes standing to contest forfeiture may move to dismiss the action under Rule 12(b)." Fed. R. Civ. P. Supp. R. G(8)(b)(i). Under the rules governing forfeiture actions in rem, the pleading requirements for a complaint are tied to the government's burden of proof at trial. *See* Fed. R. Civ. P. Supp. R. G(2)(f),[5] which provides that the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its

---

[5] Allen also cites Supplemental Rule E(2)(a), which provides that the complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." That rule no longer applies to civil forfeiture proceedings. *See United States v. $40,000 in U.S. Currency*, No. 1:09CV383, 2010 WL 2330353, at *3-4 (W.D. N.C. May 11, 2010) (explaining that on December 1, 2006, Rule G of the Supplemental Rules replaced the *in rem* forfeiture provisions of Rule E(2)). Some cases apply Rule E(2) as well as Rule G(2). *See, e.g., United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 13-14 (D.D.C. 2013).

11

burden of proof at trial."[6] This rule thus imposes a heightened pleading for complaints in civil forfeiture actions. "The additional burden of pleading requiring 'added specifics is thought appropriate because of the drastic nature of [civil forfeiture] remedies.'" *United States v. All Assets Held at Bank Julius Boer & Co., Ltd.*, 571 F. Supp. 2d 1, 16 (D.C. Cir. 2008) (quoting Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 3242 (2d ed. 1997)). This heightened pleading requirement "is not merely a procedural technicality, but a way of ensuring that the government does not seize and hold, for a substantial period of time, property to which, in reality, it has no legitimate claim."[7] *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 639 (1st Cir. 1988).

The amended complaint sets forth two theories of forfeiture. It states that the parcels of real estate and vehicles are forfeitable under 21 U.S.C. § 881(a)(6) as proceeds of drug trafficking and that the parcels of real estate and the Nissan GT-R are forfeitable under 18 U.S.C. § 981(a)(1)(A) as property involved in a money laundering transaction. Document #3 at 2 ¶5.

Allen argues that the amended complaint does not allege sufficiently detailed facts to support a reasonable inference that the properties or vehicles were purchased with proceeds of a drug transaction or conspiracy or that they were involved in a money laundering transaction. Allen is correct. The amended complaint specifies no date or time of any purported or intended drug exchange, no location, no dollar amount, no specific type or quantity of controlled substance, no

---

[6] At trial the government must prove by a preponderance of evidence that the property is subject to forfeiture, 18 U.S.C. § 1983(c)(1), and it may use evidence gathered after the filing of the complaint to meet this burden. 18 U.S.C. § 1983(c)(2).

[7] Real property ordinarily cannot be seized before an order of forfeiture is entered, but title to it may be encumbered by a lis pendens. 18 U.S.C. § 981(b)(1) and § 985(b)(1)(A) and (2). Nevertheless, the pleading standard in a civil forfeiture proceeding is the same for real property as for other property.

persons among whom such a transaction allegedly took place, no names of alleged witnesses, and no identifying information of any kind for any monetary or financial transaction related to the properties or vehicles. The amended complaint does not allege what type of drugs were distributed, much less when and to whom. Nor does the amended complaint allege a time frame within which illegal activity occurred. The only dates alleged are the years that Allen purchased the assets listed in the complaint and the statement that Allen spent more than he reported as gross income from 2008 to 2012.

The amended complaint alleges, in conclusory terms, that Allen and Jackson were "involved in the distribution of controlled substances," that they engaged in "drug trafficking," and that the property involved represents "proceeds of drug trafficking," but these conclusory allegations are unsupported by any specific factual allegations. Likewise, the amended complaint's alleges that Jackson "launders" money, that there was an effort to "conceal" certain payments, and that exchanges at one property were an effort to "provide an air of legitimacy" to certain payments, but these allegations are conclusory and without factual substantiation. The amended complaint alleges no facts demonstrating a nexus between the properties or vehicles and the vaguely-alleged drug trafficking or money laundering. The amended complaint does not identify a particular underlying drug trafficking or money laundering statute or provide even a blanket recitation of necessary elements.

Apart from the conclusory allegations of drug trafficking, the amended complaint's primary factual basis for forfeiture is that Allen has made large cash payments for the assets during a time when he did not report income commensurate with these large cash expenditures. The amended complaint alleges that unnamed persons witnessed "large amounts of cash" at 1105 Golf Links and

13

that "several large cash payments" from Jackson to Allen took place there. It alleges that 925 East Main was used by unnamed persons at some unspecified time to prepare drugs for distribution. Otherwise, the amended complaint alleges that authorities found "ammunition" and five cell phones at a residence that Jackson rented. An unnamed person or persons observed two unidentified vehicles that were titled to Allen on Jackson's property and witnessed Jackson driving unidentified vehicles that were titled to Allen. The amended complaint does not allege, however, that Jackson ever drove either of the vehicles that the government seeks to forfeit.

The amended complaint does not allege sufficiently detailed facts to support a reasonable belief that the government could prove at trial that the properties and vehicles are forfeitable. Fed. R. Civ. P. Supp. R. G(2)(f); *see Mask of Ka-Nefer-Nefer*, No. 4:11CV504 HEA, 2012 WL 1094658, at *3 (E.D. Mo. Mar. 31, 2012) ("The Government has completely failed to identify, in its verified complaint, the established law that was violated when the Mask was purportedly brought illegally into the United States or purportedly stolen from Egypt or some other undisclosed party, and it has failed to provide any facts relating to the time period surrounding these supposed events."); *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 16 ("Absent some specific indication that the [asset] is derived from or traceable to illicit activity, the complaint must be dismissed.").

## C.     Government's Request for Leave to Amend

The United States has requested leave to amend the complaint to address any deficiencies. Eastern District of Arkansas Local Rule 5.5(e) provides, in pertinent part, "A party who moves to amend a pleading shall attach a copy of the amendment to the motion." The United States has neither filed a motion to amend nor submitted a proposed second amended complaint. "In *Wolgin v. Simon*, . . . where plaintiff requested leave to amend if the court granted defendants' motion to

dismiss, [the Eighth Circuit] *held* "that to preserve the right to amend a complaint a party must submit a proposed amendment along with its motion." *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 742 (8th Cir. 2014) (emphasis in *Mask of Ka-Nefer-Nefer*) (citing *Wolgin v. Simon*, 722 F.2d 389, 395 (8th Cir. 1983)). The government may, if it chooses, seek leave to amend pursuant to Local Rule 5.5(e), but unless the government complies with the local rule the Court will not grant leave to amend.

## CONCLUSION

Robert Allen's motion to dismiss is GRANTED. Documents #20 and #21. The government's verified amended complaint in rem is dismissed without prejudice as to the real property and residence located at 5012 N. 6th Street, Blytheville, Arkansas; the real property and residence located at 1105 Golf Links, Blytheville, Arkansas; the real property and structures located at 925 E. Main, Blytheville, Arkansas; and the 2011 Nissan GT-R, VIN #JN1AR5EF8BM240254.

IT IS SO ORDERED this 3rd day of November, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE